**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Miguel CORDOVA–BERAUD,
Defendant–Appellant.**

**No. 95–3190.**

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1996.

Decided July 19, 1996.

Barry Rand Elden, Chief of Appeals, Duane J. Deskins (argued), Office of the U.S. Atty., Crim. Appellate Div., Chicago, IL, for Plaintiff–Appellee.

Ronald A. Bredemann (argued), Flood & Bredemann, Des Plaines, IL, for Defendant–Appellant.

Before CUMMINGS, COFFEY, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Miguel Cordova–Beraud pled guilty to one count of illegal reentry into the United States after having been previously convicted of an "aggravated felony" (attempted robbery—state conviction) and deported, 8 U.S.C. § 1326. He received a 77–month sentence and was ordered deported again. Cordova–Beraud argues that his sentence was improperly enhanced pursuant to U.S.S.G. § 2L1.2(b)(2), because his prior state conviction for attempted robbery was not an "aggravated felony." We affirm.

## I. BACKGROUND

Cordova–Beraud is a citizen of Mexico, with a long criminal career in the United States. He illegally entered the United States for the first time in 1980. In the years 1982 and 1983, he was convicted of several offenses in Denver, Colorado, which included assault, carrying a concealed weapon, petty theft, and first degree criminal trespass, and deported from the United States for the first time on September 23, 1983.

Shortly thereafter, Cordova–Beraud illegally reentered the United States. In 1989

and 1990, he was convicted of several more offenses in Philadelphia, Pennsylvania, including retail theft, receiving stolen property, and attempted theft. After his release, he ran into difficulty with the law in a third state. On June 21, 1991, Cordova–Beraud was convicted of attempted robbery in Cleveland, Ohio, and received an indeterminate sentence of 2 to 10 years' imprisonment. He served less than 3 years of this sentence, and Ohio correctional officials paroled him into the custody of United States immigration officials on January 18, 1994, who deported him a second time on February 3, 1994.

Cordova–Beraud illegally reentered the United States a third time, and once again engaged in further criminal activity. On September 30, 1994, Cordova–Beraud was convicted of attempted robbery in Illinois, and sentenced to 2 years' imprisonment. On February 3, 1995, Illinois correctional officials released him to United States immigration officials, who executed a federal arrest warrant charging Cordova–Beraud with illegally reentering the United States, 18 U.S.C. § 1326,[1] as evidenced by his Illinois conviction on September 30, 1994.

Cordova–Beraud was subsequently charged in a superseding indictment with illegal reentry into the United States by an alien that had been previously deported subsequent to a conviction for an aggravated felony, pursuant to 18 U.S.C. § 1326(b)(2). (Record No. 14).[2] The "aggravated felony" recited in the superseding indictment was Cordova–Beraud's 1991 conviction for attempted robbery in Ohio. (Record No. 14). On April 25, 1995, Cordova–Beraud pled guilty to this charge.

The Presentence Report ("PSR") calculated Cordova–Beraud's offense level as 21, which included a base offense level of 8 points (U.S.S.G. § 2L1.2(a)), a 16–point enhancement because he had previously been deported subsequent to a conviction for an "aggravated felony" (U.S.S.G. § 2L1.2(b)(2)), and a 3–point reduction for acceptance of responsibility (U.S.S.G. § 3E1.1). As a result of his extensive criminal activity, Cordova–Beraud's criminal history category was VI. His guideline range was determined to be 77–96 months.

The only point of contention at sentencing was whether the enhancement pursuant to U.S.S.G. § 2L1.2(b)(2) was proper, based upon the 1991 Ohio conviction for attempted robbery. Section 2L1.2(b)(2) mandates a 16–point enhancement if the alien had previously been deported subsequent to being convicted of an "aggravated felony." *See* U.S.S.G. § 2L1.2(b)(2). The relevant definition of "aggravated felony" had two components: (1) the prior offense had to have been a "crime of violence"; and (2) a term of imprisonment of "at least five years" had to have been "imposed" for the crime. U.S.S.G. § 2L1.2, comment. (n.7). While the parties agreed that the Ohio offense was a "crime of violence" for purposes of § 2L1.2(b)(2), they disagreed as to whether the indeterminate 2 to 10 year sentence constituted a "term of imprisonment imposed" of at least 5 years.

The government argued the enhancement was proper, and that the correct way to interpret the language of § 2L1.2(b)(2) was to look to the general definitions in § 4A1.2. Section 4A1.2 defines the term "sentence of imprisonment" as the stated maximum sentence imposed in the judgment, and in the case of an indeterminate sentence, the upper

**1.** During the course of his criminal activities, Cordova–Beraud has utilized 15 alias names, 9 alias dates of birth, and 4 alias social security numbers. Further, the above recounting of his criminal history only includes matters in which the disposition of the case was known. In total, he has a criminal history in Colorado, Texas, Georgia, Pennsylvania, Ohio, and Illinois.

**2.** Section 1326 provides, in relevant portion:
   (a) Subject to subsection (b) of this section, any alien who—
     (1) has been arrested and deported or excluded and deported, and thereafter

   (2) enters, attempts to enter, or is at anytime found in, the United States, ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.
  (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—...
   (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;....

8 U.S.C. § 1326.

bound is the relevant maximum.[3] The government argued Cordova–Beraud's 2 to 10 year sentence was properly deemed a 10–year sentence for purposes of § 2L1.2(b)(2). Defendant-appellant Cordova–Beraud argued that § 4A1.2 applies to calculating one's criminal history category but not to increases in offense level under § 2L1.2. He asserted that the Commission selected different terminology for the respective sections, intending different standards would apply. Cordova–Beraud maintained that "term of imprisonment imposed" meant time actually served, and, because he served less than 3 years for the Ohio attempted robbery, the enhancement was improper. Cordova–Beraud argued that his interpretation was the only equitable one, given that differing jurisdictions will have varying rules regarding good time and other sentence credits.[4]

The district judge accepted the government's position.[5] Judge Andersen sentenced Cordova–Beraud to 77 months' imprisonment, 3 years' supervised release, no fine, and a $50 special assessment. Judge Andersen also ordered that Cordova–Beraud be turned over to immigration officials for deportation at the conclusion of his term of imprisonment.

## II. ISSUE

The issue before the court is whether a conviction for a crime of violence for which a defendant received an indeterminate sentence of 2 to 10 years' imprisonment is an "aggravated felony" for purposes of § 2L1.2(b)(2). We must ascertain how an indeterminate sentence is to be evaluated for purposes of § 2L1.2(b)(2)'s requirement that the "term of imprisonment imposed" be at least 5 years for a prior conviction to be deemed an "aggravated felony."[6] The resolution of this issue hinges upon whether the definitions in § 4A1.2 apply to § 2L1.2.[7]

## III. DISCUSSION

### A. Standard of Review/Applicable Law

This appeal requires us to interpret the sentencing guidelines; our review is de novo. *United States v. Munoz–Cerna*, 47 F.3d 207, 209 (7th Cir.1995).

Guideline § 2L1.2 provides for a 16–level increase in offense level if "the defendant previously was deported after a conviction for an aggravated felony...." U.S.S.G. § 2L1.2(b)(2).

Section 2L1.2 defines "Aggravated felony" as follows, in relevant portion:

"Aggravated felony," as used in subsection (b)(2), means murder; any illicit trafficking in any controlled substance (as defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2); any illicit trafficking in any firearms or destructive devices as defined in 18 U.S.C. § 921; any offense described in 18 U.S.C. § 1956 (relating to laundering

---

3. For example, an indeterminate sentence of 1 to 5 years would be deemed a 5–year sentence under § 4A1.2. *See* U.S.S.G. § 4A1.2, comment. (n.2).

4. For instance, a 5–year sentence in the federal system would result in an actual period in custody of approximately 5 years. However, in a state which has day-for-day good time credit and similar incentive programs, a 5 year sentence would translate to less than 2½ years of actual time in confinement.

5. Judge Andersen also stated that in the event he was in error enhancing the sentence under § 2L1.2(b)(2), he would have departed upward to give the same sentence:

   If—if it is found by a higher court that my interpretation of an aggravated felony is wrong and that it is the lower range, the 24– to 30–month range that should apply, then I would

state to that court on the facts that I have that I would upward depart to the 77 months because I think that is necessary to adequately protect the victims who are innocent people in the United States whose property is repeatedly stolen by his behavior and who has shown through repeated encounters with the law that normal legal deterrence is not sufficient to stop the defendant from committing crimes. (Sentencing Transcript p. 40).

6. Only the term of imprisonment component of "aggravated felony" need be addressed, as the parties agree that attempted robbery is a "crime of violence."

7. In addition, the government raises the alternative argument that even if the enhancement under § 2L1.2(b)(2) was inappropriate, any error was harmless because the district judge stated that he would have imposed the same sentence by departing upward.

of monetary instruments); any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years; or any attempt or conspiracy to commit any such act. The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years. *See* 8 U.S.C. § 1101(a)(43).

U.S.S.G. § 2L1.2, comment. (n.7).

"Crime of violence" is defined as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

Section 4A1.2 defines "sentence of imprisonment" as follows:

(1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.

(2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

U.S.S.G. § 4A1.2(b).

The relevant application note provides further clarification:

*Sentence of imprisonment.* To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time). *See* § 4A1.2(a)(3) and (b)(2). For the purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum (*e.g.*, in the case of a determinate sentence of five

years, the stated maximum is five years; in the case of an indeterminate sentence of one to five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed the defendant's twenty-first birthday, the stated maximum is the amount of time in pre-trial detention plus the amount of time between the date of sentence and the defendant's twenty-first birthday). That is, criminal history points are based on the sentence pronounced, not the length of time actually served. *See* § 4A1.2(b)(1) and (2). A sentence of probation is to be treated as a sentence under § 4A1.1(c) unless a condition of probation requiring imprisonment of at least sixty days was imposed.

U.S.S.G. § 4A1.2, comment. (n.2).

## B. Indeterminate Sentence

Cordova–Beraud argues that the definitions in § 4A1.2 do not apply to § 2L1.2(b)(2). The appellant maintains that the Commission deliberately selected slightly different language for the provisions, and claims that the phrase "term of imprisonment imposed" in § 2L1.2 must be construed more narrowly than the phrase "sentence of imprisonment" in § 4A1.2. He asserts this is so because § 4A1.2 pertains to criminal history calculations, in which any given prior sentence will have a relatively limited incremental impact, while § 2L1.2(b)(2) provides for an enormous 16–level increase in offense level. Cordova–Beraud concludes that "term of imprisonment imposed" means the time actually served in prison. He argues this interpretation is necessary for sentencing uniformity, given that each state has its own system regarding parole and good time credits, and, as a consequence, the amount of time served on the same sentence will vary from jurisdiction to jurisdiction.

All the circuit courts that have addressed this issue (or an analogous issue) have concluded that the sentence imposed, rather than the time actually served, is controlling for purposes of § 2L1.2(b)(2). *See United States v. Quinonez–Terrazas*, 86 F.3d 382

(5th Cir.1996) ("aggravated felony" enhancement under § 2L1.2(b)(2) applies to indeterminate state sentence of 4–10 years' imprisonment); *United States v. Vasquez–Balandran,* 76 F.3d 648 (5th Cir.1996) (sec.2L1.2(b)(2) applies when state assesses a 10–year suspended sentence); *United States v. Amaya–Benitez,* 69 F.3d 1243 (2nd Cir.1995) (the term of imprisonment imposed, not time actually served, is relevant factor under § 2L1.2(b)(2)). *See also Nguyen v. Immigration and Naturalization Service,* 53 F.3d 310 (10th Cir.1995) (indeterminate sentence measured by its stated upper bound for purposes of 8 U.S.C. § 1101(a)(43)); *United States v. Reyes–Castro,* 13 F.3d 377 (10th Cir.1993) (indeterminate sentence not to exceed 5 years counts for purposes of 8 U.S.C. § 1101(a)(43)).[8]

The *Quinonez–Terrazas* court began its analysis with the common law definition of an indeterminate sentence: "A sentence to imprisonment for the maximum period defined by law, subject to termination ... at any time after service of the minimum period." 86 F.3d at 383. The Fifth Circuit then noted that the common law definition was largely incorporated in the commentary to § 4A1.2, which provides the length of a sentence of imprisonment is its stated maximum. *Id.* The court concluded that because the language of § 4A1.2 and § 2L1.2 was consistent, it was "proper to use §§ 4A1.1–2 in determining whether an indeterminate sentence qualifies as an aggravated felony for purposes of § 2L1.2." *Id.* at 383. *See also United States v. Cuevas,* 75 F.3d 778, 782 (1st Cir.1996). While § 4A1.2 explicitly applies to calculations of criminal history, it is appropriate to apply the same principles to § 2L1.2, as both sections have the same general purpose-determining what effect prior criminal activity will have on the defendant's current sentence. *See Cuevas,* 75 F.3d at 782 n. 10 (both provisions "provide increased sentences for defendants who have demonstrated recidivist tendencies"); *United States*

*v. Ortiz–Gutierrez,* 36 F.3d 80, 82 (9th Cir. 1994) (both sections "determine the extent to which prior convictions affect a defendant's sentence for the current offense").

We agree with the interpretation of the Second, Fifth and Tenth Circuits that the sentence imposed, rather than time served, is the relevant factor. Cordova–Beraud's 2 to 10 year sentence should be counted as a 10–year sentence for purposes of § 2L1.2(b)(2). Whether he served 1 year, 3 years, or 5 years is irrelevant; the maximum potential term (the upper bound in an indeterminate sentence) imposed by the sentencing judge, not the time actually served, is controlling.

Cordova–Beraud's argument that his interpretation is necessary and logical in order to avoid inconsistency resulting from varying state time credit practices is also unpersuasive. As the Fifth Circuit stated:

> Clearly, the Sentencing Commission envisioned this provision's applicability to extend to those defendants who actually are ordered to serve their sentences and also those defendants who avoid a determined period of incarceration by a process which suspends serving the term of imprisonment.

*Vasquez–Balandran,* 76 F.3d at 651. The Fifth Circuit further concluded, in the context of suspended sentences, "there is no indication in the relevant guideline or statutes that the Sentencing Commission or Congress intended state law to determine whether the term of imprisonment was imposed." *Id.* at 650. Further, Cordova–Beraud's argument ignores the commentary of § 2L1.2, which specifically provides that the "term of imprisonment imposed" is considered "regardless of any suspension of such imprisonment"; this language clearly demonstrates that it is the term of imprisonment imposed rather than the time actually served which controls. *See* U.S.S.G. § 2L1.2, comment. (n.7). *See also Vasquez–Balandran,* 76 F.3d at 650. In addition, the Commission's choice of the word "imposed," rather than "served,"

---

8. *Reyes–Castro* and *Nguyen* deal with the deportation provisions of 8 U.S.C. § 1101(a)(43), which contains language identical to that at issue in this case. Section 1101(a)(43) defines "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years." 8 U.S.C. § 1101(a)(43)(F).

makes it abundantly clear that the sentence imposed by the judge is of greater moment than the time ultimately spent in confinement. Lastly, Cordova–Beraud's argument that § 4A1.2 and § 2L1.2 apply different standards cuts against him because § 2L1.2 is the less forgiving of the provisions. While § 4A1.2 explicitly excludes suspended terms of imprisonment, see U.S.S.G. § 4A1.2(b)(2), § 2L1.2 explicitly includes suspended terms in the calculation of the term of imprisonment. *See* U.S.S.G. 2L1.2, comment. (n.7).[9]

## IV. CONCLUSION

We hold that a conviction for a crime of violence for which a defendant receives an indeterminate sentence which has a stated upper bound of 5 years or more can be deemed an "aggravated felony" for purposes of § 2L1.2(b)(2). The district court is AFFIRMED.

---

9. In light of our conclusion, we need not address the government's alternative theory that the district judge would have departed upward to impose the same sentence.